UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RICHARD HOLZENDORF,
individually, and as Personal
Representative of the Estate of
Richard Lavon Holzendorf, deceased,

       Plaintiff,

v.                                        CASE NO. 3:21-cv-577-MCR

STAR VAN SYSTEMS, INC. and
ZELJKO RADOVIC,

       Defendants.
_____

STAR VAN SYSTEMS, INC.,

       Counter-Plaintiff,

v.

ESTATE OF RICHARD LAVON
HOLZENDORF,

       Counter-Defendant.
_____/

## **ORDER**

**THIS CAUSE** is before the Court on Plaintiff's Motion to Compel Defendant Star Van Systems to Produce Driver-Facing Dashcam Video ("Motion") (Doc. 33), Defendants' Response thereto (Doc. 36), Plaintiff's Reply to Defendants' Response ("Reply") (Doc. 43), Defendants' Sur-Reply to

Plaintiff's Reply ("Sur-Reply") (Doc. 45),[1] Counter-Defendant's Amended Motion to Compel Defendant, Star Van Systems, to Produce Driver-Facing Dashcam Video ("Amended Motion") (Doc. 47), and Counter-Plaintiff's Response thereto (Doc. 49). For the reasons stated herein, the Motion and the Amended Motion are due to be **GRANTED**.

## I. Background

On June 3, 2021, Richard Holzendorf ("Mr. Holzendorf"), individually, and as Personal Representative of the Estate of his deceased son, Richard Lavon Holzendorf (decedent), filed this wrongful death action in this Court. (Doc. 1.) This action arises out of an incident that occurred in Nassau County, Florida, on January 22, 2021, in which the decedent's vehicle collided with an 18-wheeler truck operated and/or maintained by Defendants, Zeljko Radovic and Star Van Systems, Inc. ("SVS"). (*Id.*) On July 30, 2021, Defendants filed their Answer and Affirmative Defenses to the Complaint, in which they denied liability. (Doc. 7.) On November 8, 2021, SVS, as Counter-Plaintiff, filed a Counterclaim against the Estate of Richard Lavon Holzendorf, Counter-Defendant. (Doc. 28.) On December 21, 2021, Counter-Defendant filed an Amended Answer and Affirmative Defenses to the Counterclaim. (Doc. 32.)

---

[1] The Reply and Sur-Reply were filed pursuant to the Court's April 26, 2022 Order (Doc. 41).

2

The collision at issue in this action was recorded via a dual-facing dashboard camera positioned above the interior dashboard of the 18-wheeler truck, which simultaneously recorded both the roadway in front of the vehicle and the driver inside the vehicle.  (Doc. 33 at 2.)   On July 26, 2021, Plaintiff served his First Request for Production of Documents on SVS, which encompassed "[a]ny photographs, movies, surveillance footage, security footage, and/or videotapes taken by any electronic device or anyone related to the Crash, that reflect the scene of the Crash, the vehicles involved or any of the parties to the cause for the day of the Crash" as well as electronic device "data that relates to the operation of the tractor or trailer for the (30) days before, the date of the Crash and seven days after."   (Doc. 33 at 2-3; Doc. 33-2 at 3-4.)

On September 13, 2021, Defendant produced some of the roadway-facing dashcam video (up to the point of impact only), but none of the driver-facing dashcam video.  (Doc. 33 at 3.)   On November 9, 2021, Plaintiff's counsel requested the post-collision footage of the roadway-facing video and "the backward facing camera footage from before, during and after the subject collision."  (Doc. 33-3 at 2.)   On November 10, 2021, Defendant produced additional roadway-facing video (from the point of impact to the point of rest), but none of the driver-facing video.  (Doc. 33 at 3.)   On November 11, 2021, defense counsel stated that the trailer did not have a

3

rear facing camera, and confirmed his position on November 15, 2021 after consultation with his client. (Doc. 33-3 at 3.) On November 17, 2021, Plaintiff's counsel responded that the trailer had both a roadway facing camera and a driver facing camera, and again requested the footage from the driver-facing camera. (*Id.* at 4.) On November 29, 2021, a paralegal from Plaintiff's counsel's office followed up with an email about the footage from the driver facing camera. (*Id.* at 5.)

On December 1, 2021, Plaintiff sent further correspondence to Defendant, requesting the driver-facing video by December 6, 2021. (Doc. 33 at 3; Doc. 33-3 at 6 (also mentioning Plaintiff's spoliation letter dated February 11, 2021[2]).) In response to Plaintiff's counsel's correspondence, on December 2, 2021, defense counsel responded: "I previously provided all known video of the accident. It's my understanding that there is no driver facing video. Why do you believe that there is?" (Doc. 33-3 at 7.) On the same day, Plaintiff's counsel responded with a picture of the dash camera and a description of its capabilities, and again requested the driver-facing video. (Doc. 33 at 4; Doc. 33-3 at 8.) Then, on December 13, 2021, defense counsel emailed a privilege log, claiming that the driver-facing video is "[w]ork [p]roduct and [c]onfidential [i]nformation," thereby privileged from

---

[2] The two spoliation letters, dated January 29, 2021 and February 11, 2021, are attached to the Reply and to the Amended Motion. (Docs. 43-3, 47-5.)

4

disclosure.  (Doc. 33 at 4; Doc. 33-3 at 11-12.)

## II.   The Parties' Positions

In the Motion, Plaintiff seeks an order compelling Defendant to produce its driver-facing dashcam video or, alternatively, permitting Plaintiff to perform a data download of the camera, computer, or electronic device containing the video.  (Doc. 33 at 4, 11.)  Plaintiff contends that the driver-facing dashcam video could not have been created in anticipation of litigation because the footage was captured before the crash occurred.  (*Id.* at 5.)  According to Plaintiff, the video was created in the ordinary course of business.  (*Id.*)

Further, Plaintiff contends that the driver-facing dashcam video is the best evidence of Defendant Radovic's activities (action, inaction, level of distraction, alertness, and physical condition) while inside the truck during the moments leading up to the collision, and that Plaintiff is significantly prejudiced in his trial preparation without it, because his accident reconstructionist cannot accurately reconstruct the collision without the best evidence regarding Defendant Radovic's movements, reaction time, alertness, and distraction inside the semi-truck.[3]  (*Id.* at 6, 10-11.)

---

[3] In support of the Motion, Plaintiff submits the Affidavit of Jonathan Walter, Ph.D., P.E., who was retained to conduct an accident reconstruction and biomechanical analysis of the subject accident.  (Doc. 33-6 at 1.)  Dr. Walter states that the driver facing camera footage "is a critical component to [his] accident

5

Plaintiff asserts that "[t]he video recording has crucial value as substantive evidence and could have substantial value as impeachment evidence," as there are no independent witnesses to the collision. (*Id.* at 6.) Because Defendants deny liability and assert comparative negligence on decedent's part, Plaintiff asserts he has a substantial need for the driver-facing video. (*Id.* at 6-7.) Plaintiff explains:

> The roadway-facing dashcam video that was produced by Defendant [SVS] shows that Defendant Radovic never slowed or braked before colliding with the Holzendorf vehicle at approximately 64 MPH. . . . It is anticipated that the driver-facing video will show Defendant Radovic's actions, inaction, level of distraction, alertness, and physical condition during the moments leading up to the crash. Plaintiff cannot obtain the substantial equivalent of this driver-facing dashcam data by any other means and without undue hardship because the data only exists within the Defendants' vehicle dashcam modules that remain in the possession, custody, and control of the Defendants.

(*Id.* at 7.)

Plaintiff also argues that Defendant's boilerplate, blanket privilege

---

reconstruction and analysis of the driver's perception and reaction times." (*Id.* at 1-2.) He explains:
> The at-issue driver-facing footage will conclusively and independently establish the identity of the driver, and show the driver's attention, focus and movements in the moments leading up to the collision. The driver-facing video is a key piece of evidence that will provide a true record of the truck driver's actions leading up to this collision. . . . The at-issue video footage provides real-time evidence of how and why the subject collision occurred. Without it, my analysis of causation is significantly hampered.

(*Id.* at 2.)

6

objection is limited in scope and does not encompass the requested dashcam video.  (*Id.* at 8-9.)  Plaintiff explains:

> By adding the phrase "to the extent that such requested information reflects the impressions, conclusions, opinions, legal research or theories **of defendant's attorneys**," to its blanket objection, Defendant [SVS] limited the scope of its objection to information created by its attorneys.  The subject dashcam video was not created by an attorney, but instead by Defendant [SVS] itself before lawyers were involved in this matter.

(*Id.* at 9 (emphasis in original).)  Plaintiff adds that an objection based upon work-product privilege must be specifically raised and demonstrated rather than asserted in a blanket fashion.  (*Id.* (citations omitted).)  Here:

> Defendant [SVS's] privilege log is defective, as it does not provide any description of the subject matter of the withheld dashcam video, stating only that [the] video is "work-product and confidential."  Defendant [SVS] provides no explanation of why the recording is privileged or immune from discovery.

(*Id.* at 9-10.)

Defendants object to producing the driver-facing video, because "the very purpose and creation of [this] video was done specifically for the purpose of and in anticipation of litigation."  (Doc. 36 at 3.)  Defendants explain:

> 9.    The driver facing camera is constantly recording but only activates a save function at the time of a "Trigger Event" where it saves 1 minute prior and 1 minute after an event.  A Trigger Event is a collision, accident, sudden brake or similar safety incident.  Without the occurrence of a Trigger Event, video footage is not saved and automatically deleted.  . . .
> 10.   As such, the driver facing video was created **after** the occurrence of the accident, saved by [SVS] and sent to its attorneys in anticipation of litigation related to the accident.  . . .

7

> . . .
> 12. Here, the difference between surveillance footage and the driver video at issue is the occurrence of a Trigger Event. Without a Trigger Event, video from the driver facing camera is not saved and automatically deleted, whereas surveillance footage can be accessed and saved at any time.
> 13. The occurrence of a Trigger Event was the only way that the driver facing video was saved. Therefore, the video is protected from production by the work product privilege because [it] was created and saved after a specific type of occurrence and [in] anticipation of litigation.   . . .

(*Id.* at 3-4 (emphasis in original).)

Further, Defendants contend that if the Court finds the work product privilege applies, Plaintiff cannot show substantial need for the driver-facing video and undue hardship. (*Id.* at 4.) Defendants explain that Plaintiff already has the roadway-facing video showing one minute before and one minute after the accident, already has "the information through alternative means, and can further explore the issue through interrogatories and deposing the driver." (*Id.* at 6.)

Defendants also argue that their privilege log is adequate, because "identifying and labeling the subject footage as work product and confidential is sufficient as it demonstrates that the driver facing video was purposefully saved in anticipation of litigation." (*Id.* at 7.)

As part of their Response, Defendants filed the Affidavit of Milan Prpa, the Driver Training Manager for SVS. (Doc. 36-1.) The Affidavit states, in relevant part:

8

> 3. [SVS's] vehicles are typically equipped with forward facing video cameras and driver facing cameras located within the interior of vehicle driver compartments.
>
> 4. The purpose of forward facing and driver facing cameras is for use in the event that litigation is brought against [SVS] by capturing any accidents or "trigger events" that may occur with the vehicle. The recorded video is also used by [SVS] for driver instruction, safety and training.
>
> 5. Both the forward and driver facing cameras are constantly recording but a video save function is only activated at the time of a collision, accident, sudden brake or similar safety incident called a "Trigger Event."
>
> 6. When activated by a Trigger Event, video from 1 minute prior and 1 minute after the event is automatically saved on a server remote from the camera.
>
> 7. Without the occurrence of a Trigger Event, video is automatically deleted.
>
> 8. In my position as Driver Training Manager, I am familiar with a January 22, 2021 accident involving [an SVS's] vehicle on Interstate 95 in the State of Florida (the "accident").
>
> 9. The accident was a Trigger Event that caused both the forward facing and driver facing cameras to save video 1 minute before and 1 minute after the accident.
>
> 10. After learning of the accident and reviewing the video from the forward facing and driver facing cameras, those recordings were sent to [SVS's] attorneys in the event that a lawsuit was brought against the company related to the accident.

(*Id.* at 2-3.)

In the Reply, Plaintiff asserts, based on Defendant's corporate representative's recent deposition, that the primary motivating purpose for

9

the dashcams in Defendant's vehicles was employee surveillance and training, not litigation.[4] (Doc. 43 at 1-2.) Mr. Prpa's deposition testimony also indicates that through its Omnitracs monitoring service, Defendant remotely monitors driver activity via dashcams in addition to monitoring speed, idle time, fuel consumption, engine, and hard braking. (*Id.* at 2.) Plaintiff explains:

> Regardless of a "trigger event," the dashcams continuously recorded and transmitted video the entire day of the subject incident.
> Within thirty days of recording video, SVS can submit a request for an entire day of driving activity. A trigger event merely provides instant access to a two-minute copy of the recorded video without having to submit a request to Omnitracs for the video. After thirty (30) days, the video is no longer available. Despite receipt of Plaintiff's spoliation letter that was mailed within 30 days of the subject accident, Defendants failed to preserve all of the video transmitted to Omnitracs from the date of the subject collision.

(*Id.* at 2-3 (internal citations omitted).)

In addition, Plaintiff states that Defendants' trigger event argument fails because "hard braking" was the only trigger event that SVS tracked. (*Id.* at 3.) As such:

> If the Court accepts Defendants' argument that a "trigger event" caused the creation of the dashcam video, then it follows that the

---

[4] Milan Prpa's deposition transcript from February 17, 2022 is attached to Plaintiff's Reply (Doc. 43-2) and to the Amended Motion (Doc. 47-4). Mr. Prpa testified, in relevant part, that the "only" or "major" reason for installing dashcams SVS's trucks was for training purposes. (Prpa Dep. 24:16-25; *see also id.* at 165:4-12.)

10

>  video was created **before the instant accident**.  No litigation could have reasonably been anticipated based upon a hard brake as hard braking could occur for a deer in the road, a mechanical issue, traffic, or by mistake.  The apprehension of litigation must be subjectively and <u>objectively reasonable</u> in the circumstances.  Defendants' work product assertion of anticipation of litigation based upon braking data is objectively unreasonable.

(*Id.* (emphasis in original) (internal citations omitted).)

Further, according to Plaintiff, "the question is not why or when the video was saved, but <u>why and when it was created in the first place</u>."  (*Id.* at 4 (emphasis in original).)  Plaintiff asserts that the video here was created as a usual business practice for driver surveillance and training and not due to anticipated litigation and "its primary evidentiary value is proof of the underlying facts surrounding the incident."  (*Id.* at 5.)

Finally, Plaintiff states that according to the recent expert report of Robert Knudsen, CISSP, CCE, "Defendant Radovic was on his cell phone for almost an hour within two seconds of the impact."[5]  (*Id.*)  Thus, Plaintiff

---

[5] Mr. Knudsen's April 29, 2022 expert report is attached to Plaintiff's Reply (Doc. 43-5) and to the Amended Motion (Doc. 47-8).  Mr. Knudsen's report states, in relevant part: "Based on a review of the AT&T phone records, the Samsung Device Extraction, and the BlackVue Dashcam Video, it is my expert opinion, within a reasonable degree of certainty, that a call was in progress seconds before the accident occurred."  (Doc. 43-5 at 11; Doc. 47-8 at 11.)
The transcript from Zeljko Radovic's February 16, 2022 deposition is also attached to Plaintiff's Reply (Doc. 43-4) and to the Amended Motion (Doc. 47-6).  Mr. Radovic testified that he was talking to a colleague on his cell phone, with his head phones on, prior to the accident.  (Radovic Dep. 36:22-25, 50:17-20, 54:11-18; *see also id.* at 54:19-23 ("Q.  . . .  At the time that the collision occurred were you on a phone call?  . . .  A.  . . .  I don't remember.").)

asks the Court to either compel production of the driver-facing dashcam video or, alternatively, conduct an in-camera review of the video to determine whether its production serves the ends of justice. (*Id.* at 5-6.)

In the Sur-Reply, Defendants contend that Plaintiff's Reply raises several arguments that were not presented in the Motion or in the Response, and, as such, should not be considered by the Court. (Doc. 45.) However, the Court finds that these purportedly new arguments are actually responses to Defendants' argument about work product privilege and, therefore, will be considered in deciding the Motion. Moreover, these arguments were raised in the Amended Motion, filed by the Estate, seeking to compel SVS to produce the driver-facing dashcam video. (Doc. 47.) As the arguments raised in the Amended Motion and the Response thereto overlap with the arguments presented in connection with the Motion filed by Mr. Holzendorf, they will not be restated here.

### III. Standard

Claims of work product immunity are governed by Rule 26(b)(3) of the Federal Rules of Civil Procedure, which states in pertinent part:

(A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

12

>> (i) they are otherwise discoverable under Rule 26(b)(1); and
>> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
> (B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed.R.Civ.P. 26(b)(3).[6]

The work product protections of Rule 26(b)(3), typically apply "only to documents prepared principally or exclusively to assist in anticipated or ongoing litigation." *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 471 (S.D.N.Y. 1993) (internal citations omitted). "[I]n order for the work product doctrine to apply, the party asserting the doctrine must demonstrate that at the time the materials were created or drafted, the entity must have anticipated litigation." *Schulte v. NCL (Bahamas) Ltd.*, No. 10-23265-CIV, 2011 WL 256542, *2 (S.D. Fla. Jan. 25, 2011) (citing *CSK Transp., Inc. v. Admiral Ins. Co.*, No. 93-132-CIV-J-10, 1995 WL 855421, *2

---

[6] "Unlike the attorney-client privilege, the scope of protection provided by the work product doctrine is a procedural question and thus governed by federal, as opposed to state law in a diversity action." *Sowell v. Target Corp.*, No. 5:14-cv-93-RS-GRJ, 2014 WL 2208058, *1 (N.D. Fla. May 28, 2014) (citation omitted); *see also Stern v. O'Quinn*, 253 F.R.D. 663, 674 (S.D. Fla. 2008) ("Regardless of the item or information sought or the stage of the litigation at which it is requested, . . . federal law governs application of the work-product protection, even in diversity cases."). However, "Florida law regarding the work product privilege is largely consistent with federal law." *Sowell*, 2014 WL 2208058 at *3 n.2.

13

(M.D. Fla. July 20, 1995)).[7] "Thus, materials or documents drafted or created in the ordinary course of business are not protected." *Id.*

"The Court must thus determine when the contested documents were created, and why the documents were created in assessing the applicability of the work product doctrine." *Spirit Master Funding, LLC v. Pike Nurseries Acquisition, LLC*, 287 F.R.D. 680, 685 (N.D. Ga. 2012). "[I]t is now well recognized that documents that serve a dual purpose are covered by the work product protection if they were produced 'with the 'motivating purpose' for or 'because of' anticipated litigation.'" *Id.* Also, "ordinarily, the work product doctrine does not shield from discovery documents created by third-parties." *Hunter's Ridge Golf Co. v. Georgia-Pacific Corp.*, 233 F.R.D. 678, 681 (M.D. Fla. 2006).

"The work product privilege provides only a qualified immunity from discovery." *Atlantic Recording Corp. v. Spinrilla, LLC*, No. 1:17-cv-00431-AT, 2018 WL 6362660, *21 (N.D. Ga. Sept. 28, 2018). "It protects only documents and tangible things. It does not protect facts learned from the documents or things." *Id.* (citations omitted). Although mere facts "are not protected by the work-product doctrine," when "the facts are so intertwined

---

[7] The "anticipation of litigation" inquiry is both subjective and objective. *In re: Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) (stating "the lawyer must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable").

with the mental impressions of the attorney or other work product protected materials, other methods exist for obtaining the factual information without disturbing the work-product protection," such as through depositions and interrogatories. *Spirit Master*, 287 F.R.D. at 687. "As work product is a 'qualified privilege,' it can thus be waived 'when the covered materials are used in a manner that is inconsistent with the protection.'" *Spinrilla*, 2018 WL 6362660 at *21 (citations omitted).

"The work product privilege 'must be specifically raised and demonstrated rather than asserted in a blanket fashion.'" *Spirit Master*, 287 F.R.D. at 684 (internal citations omitted). "This burden may be satisfied through a detailed privilege log and affidavits from counsel, the party, or the expert, and also by any of the traditional ways in which proof is produced in pretrial proceedings." *Id.* "A privilege log's description of each document and its contents must provide sufficient information to permit courts and the parties to test the merits of the privilege claim." *Elite Mitigation Servs., LLC v. Westchester Surplus Lines Ins. Co.*, Case No. 5:19-cv-381-TKW/MJF, 2020 WL 6126886, *6 (N.D. Fla. Apr. 16, 2020); *see also Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 698 (N.D. Ga. 2007) (stating the "burden is met when the party produces a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit from counsel"). "Once [the party who

15

asserts the claim of privilege] has shown the application of the work product privilege, the burden shifts to [the other side] to demonstrate the existence of exceptional circumstances for the discovery of otherwise privileged documents." *Spirit Master*, 287 F.R.D. at 684.

### IV. Analysis

Here, Defendants have not shown that the work product privilege applies to the driver facing dashcam video. As an initial matter, Defendants' boilerplate, blanket privilege objection does not even seem to encompass the requested video, because SVS limited the scope of its objection to information created by its attorneys. Also, Defendants' privilege log is deficient in that it merely states the video is "[w]ork [p]roduct and [c]onfidential [i]nformation" without any additional explanation. (Doc. 33 at 4; Doc. 33-3 at 11-12.) More importantly, even ignoring these deficiencies, Defendants have not shown that at the time the video was created, they anticipated litigation.

While Defendants initially state that the video was *created* "specifically for the purpose of and in anticipation of litigation" (Doc. 36 at 3), they later explain that "the driver facing video was purposefully *saved* in anticipation of litigation" (*id.* at 7 (emphasis added)). According to Mr. Prpa's Affidavit, the purpose of both "forward facing and driver facing cameras is for use in the event that litigation is brought against [SVS]" (Doc. 36-1 at ¶ 4); however, the forward-facing video was produced without objection, but the driver facing

16

video was not.[8]  Even ignoring this inconsistency, Mr. Prpa testified at his deposition that the primary purpose for the dashcams in SVS's trucks was employee training and surveillance, not litigation.  (*See* Prpa Dep. 24:16-25, 165:4-12; *cf.* Doc. 36-1 at ¶ 4 (stating that one of the purposes of the video was "for driver instruction, safety and training").)

As such, by Defendant's corporate representative's own admission, the driver facing video was created in the ordinary course of business.  *See Sowell*, 2014 WL 2208058 at *2 (stating that the video was "taken and recorded in the routine and ordinary course of business of [defendant]" and there is no evidence that the video "was implemented or created because of the prospect of litigation"); *see also Schulte*, 2011 WL 256542 at *4 ("In this matter, there is no question that the video tape was made as part of the normal course of surveillance videos made by NCL.  Thus, the video was not created in the work product context for purposes of or in anticipation of litigation.").  Also, the primary evidentiary value of the video is proof of the underlying facts surrounding the collision.  *See Sowell*, 2014 WL 2208058 at

---

[8] It also seems questionable that the driver facing video was created after the occurrence of the accident.  In his Affidavit, Mr. Prpa stated that the "cameras are constantly recording but a video save function is only activated at the time of a collision, accident, sudden brake or similar safety incident called a 'Trigger Event,'" and that "[t]he accident was a Trigger Event that caused both the forward facing and driver facing cameras to save video 1 minute before and 1 minute after the accident."  (Doc. 36-1 at ¶¶ 5, 9.)  However, in his deposition, Mr. Prpa testified that "hard braking" was the only Trigger Event that SVS tracked.  (Prpa Dep. 189:3-6; *see also id.* at 25:5-8, 66:2, 66:18-19.)

\*4 ("Because the tape here depicts the incident giving rise to Plaintiff's claim[,] its primary evidentiary value is proof of the underlying facts surrounding the incident and not primarily for impeachment purposes.").

Even accepting Defendants' position that the video was *saved* in anticipation of litigation, "the mere act of preserving the tape—as opposed to creating the original recording—is not sufficient to transform a document created in the ordinary course of business into work product protected from disclosure."  *Sowell*, 2014 WL 2208058 at \*3; *see also Schulte*, 2011 WL 256542 at \*4 (finding that "the act of preserving [the] non-privileged video did not then convert it to work product" and declining "to follow *Bolitho* to the extent that it holds that a surveillance video made in the regular course of an entity's business, which captures an accident at the time it occurs, becomes work product when counsel orders its preservation").  "Indeed, if that was the law literally ever[y] piece of electronically stored information ("ESI") preserved by a defendant as part of a defendant's duty of preservation would be off limits in discovery because it would be considered work product." *Sowell*, 2014 WL 2208058 at \*3; *see also Schulte*, 2011 WL 256542 at \*3 ("It would be anomalous, to say the least, if by ordering a client to preserve evidence created in the ordinary course of business, in anticipation of litigation, counsel was able to shield that evidence from production based upon work product protection.").

Here, a full day of the video from the date of the collision was available from Omnitracs for 30 days after the collision.  (Prpa Dep. 56:19-23.)   Yet, Defendants apparently failed to preserve the full video despite Plaintiff's counsel's timely anti-spoliation letters, dated January 29, 2021 and February 11, 2021.   (Prpa Dep. 56:24-57:5, 59:12-16, 61:20-62:20, 70:24; Docs. 43-3, 47-5.)   Also, to the extent the video was preserved for 30 days as part of a general policy of preserving videos, "the practice would be more akin to a routine business practice rather than an action taken by the defendant in anticipation of litigation."   *Sowell*, 2014 WL 2208058 at *3.

Based on the foregoing, the Court finds that the driver-facing dashcam video was created in the ordinary course of business and, therefore, is not entitled to work product immunity under Rule 26(b)(3).   Thus, the Court does not address the arguments about Plaintiff's substantial need for the video and undue hardship to obtain its substantial equivalent by other means.

Accordingly, it is **ORDERED**:

The Motion (**Doc. 33**) and the Amended Motion (**Doc. 47**) are **GRANTED**.   Defendant SVS shall produce the driver-facing dashcam video within **three (3) days** of the date of this Order.

20

**DONE AND ORDERED** at Jacksonville, Florida, on June 8, 2022.

                                        MONTE C. RICHARDSON
                          UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record